UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Stanley Wade Starr,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>Antonio Baca, et al.,<br><br>　　　　　Respondents. | CV 11-0395-TUC-JGZ (JR)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Stanley Wade Starr's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The Arizona Court of Appeals summarized the factual background of Starr's and his co-defendant's convictions as follows:

> The charges against Starr and his codefendants arose from actions they took after K., an investor in real estate, purchased a house at a foreclosure sale through his limited liability company. Except for the value of the house, Starr does not challenge the sufficiency of the evidence to support the jury's findings that he had conspired to steal the house from K. Indeed, Starr was convicted of knowingly recording in the Pima County recorder's office three false documents pertaining to the property, one of which created a public appearance that a codefendant actually owned the house instead of K.
>
> Viewed in the light most favorable to supporting the verdicts, *see State v. George*, 206 Ariz. 436, ¶ 3, 79 P.3d 1050, 1054 (App. 2003), the evidence of the house's value was as follows: K. purchased the house for $87500. He testified his goal as an investor was to buy the house "under market" value and resell it for a profit. He estimated at the time of purchase that, after making improvements, he would be able to resell it for $150,000 to $170,000. However, he did not make the anticipated improvements because a cloud on the title caused by Starr's and his codefendants' actions made him leery of investing any more funds in the house. Approximately two years later, he sold it for "around $115,000."

Ex. A, pp. 2-3.[1] A jury convicted Starr *in absentia* of three counts of filing false instruments, theft of more than $100,000.00 in real property, and conspiracy. Ex. A, pp. 1-2; Ex. N, p. 1. The trial court sentenced Starr to consecutive prison terms of four years on the conspiracy conviction and five years on the theft conviction, and to a concurrent term of one-year on the remaining counts. Ex. A, p. 2.

---

[1] Unless otherwise indicated, all exhibit references are to the exhibits attached to the Respondents Answer to Petition for Writ of Habeas Corpus (Doc. 9).

1   Starr appealed his conviction, claiming that the prosecution did not prove the
2  value of the property was over $100,000.00 and that the trial court's jury instruction
3  on value was insufficient.  Ex. B, pp. 30-43.  By Memorandum Opinion filed August
4  21, 2006, the Court of Appeals denied Starr's appeal on the merits.  Ex. A.

5   On April 13, 2009, Starr filed a Petition for Review by the Arizona Supreme
6  Court that included a request that the petition, despite Starr's acknowledgment that it
7  was untimely, be permitted by the court.  Ex. D.  By order dated April 20, 2009, the
8  Court of Appeals granted Starr's request and ordered that the Petition for Review be
9  considered timely filed.  Ex. C.  In the Petition, Starr raised four claims of
10 prosecutorial misconduct and alleged that his counsel was ineffective at trial and on
11 appeal.  Ex. D, pp. 6-12.  He also claimed that he was subjected to double jeopardy,
12 that his sentence was excessive and that the theft statute was improperly applied by
13 the trial court.  *Id*., pp. 12-14.  On July 30, 2009, the Supreme Court denied review
14 without comment.  Ex. E.

15   On April 13, 2009, Starr initiated state post-conviction relief ("PCR")
16 proceedings by filing a notice and accompanying memorandum requesting he be
17 permitted to file a "delayed" pleading, claiming ineffective assistance of appellate
18 counsel prevented him from filing a timely petition.  Ex. F.  In the PCR petition filed
19 at the same time, Starr alleged he was entitled to relief due to ineffective assistance of
20 counsel, the unconstitutional suppression of evidence by the State, violation of his
21 double jeopardy rights, other unspecified constitutional violations, and due to the
22

1   existence of newly-discovered evidence.  Ex. G.  On April 29, 2009, the trial court
2   summarily dismissed the petition as untimely.  Ex. H.

3   　　　Starr then petitioned the Arizona Court of Appeals and challenged the trial
4   court's finding that the PCR petition was untimely.  Ex. I, pp. 4-5.  He also raised
5   four claims of prosecutorial misconduct, two claims of misconduct by the trial judge,
6   and alleged his counsel had provided ineffective assistance at both the trial and
7   appellate levels.  *Id*., pp. 6-7.  The Court of Appeals found that Starr's PCR petition
8   was timely because it had vacated the mandate on his direct appeal.  Ex. J.  The Court
9   of Appeals therefore remanded the petition to the trial court for further proceedings,
10  but expressed no opinion on the merits of Starr's claims.  *Id.*, p. 3.

11  　　　On remand, Starr filed a new PCR petition asserting four claims of
12  prosecutorial misconduct, three claims of misconduct by the trial judge, and again
13  alleging his counsel had provided ineffective assistance at both the trial and appellate
14  levels.  Ex. K, pp. 5-6.  Starr also asserted that he was subjected to selective
15  prosecution, received an excessive sentence, was the victim of a misapplication of
16  Arizona statutes, and was denied the right to trial by jury.  Ex. K, pp. 19-22.  The trial
17  court found that Starr's claims of prosecutorial misconduct and for selective
18  prosecution were precluded under Rule 32.2(a), Ariz.R.Crim.P., because the claims
19  were not raised on direct appeal.  Ex. L, pp. 2-3.  The court also found Starr's claims
20  of judicial misconduct precluded under Rule 32.2(a)(2), Ariz.R.Crim.P., because it
21  had been raised in a previous collateral proceeding.  *Id*., p. 3.  Finally, the trial court
22

found that Starr had failed to present a colorable claim of ineffective assistance of counsel. *Id.*, pp. 3-4.

Starr filed a petition for review in the Arizona Court of Appeals wherein he again alleged claims of prosecutorial misconduct, judicial misconduct and ineffective assistance of counsel. Ex. M, p.2. He also offered a "list of additional issues" that included claims alleging a claim that "new evidence" would have changed the outcome of the trial, that he was indicted based on a "false instrument," that his counsel was ineffective for failing to raise claims at trial and on appeal, that he was improperly tried *in absentia* without notification, that the prosecutor relied on "non-existent crimes" to support the conspiracy charge, that the trial court erred in imposing consecutive sentences, that the trial court abused its discretion when determining whether "theft applies to real estate," and that the Arizona law allowing him to be tried *in absentia* violated the United States Constitution. Ex. M, pp 2-3.

The Court of Appeals adopted the trial court's order denying the petition and further reiterated that Starr's claims of ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct were precluded under rule 32.2(A) because they should have been raised on direct appeal or in his first PCR petition. Ex. N, pp. 2-3. As for Starr's list of "additional issues," the appeals court declined to address them "either because they were raised and addressed in the court's ruling below, which we have adopted in this decision, or because they do not appear to have been raised below at all." *Id.*, pp. 3-4 (citation omitted).

In the petition now before the Court, Starr raises five claims. In Ground One, he alleges the trial court erred by refusing to grant his motion for judgment of acquittal based on insufficient evidence. In Ground Two, he alleges that his counsel was ineffective for failing to tell him that the state had offered Starr a plea agreement. Ground Three alleges that a then-recent state-court decision clarifying the application of accomplice liability under state law would have induced him to take the plea had he been aware of it and understood it. In Ground Four, he alleges that the trial court did not properly define the crime of felony murder in the instructions given to the jury. Ground Five alleges that the trial court erred by admitting into evidence the victim's statements that he had been "jumped" by three men and had his car stolen because that statement was inadmissible hearsay and violated the Sixth Amendment's confrontation clause. *Petition*, pp. 3-10.

## II. TIMELINESS

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one year statute of limitations to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Petitions filed beyond the one-year limitations period must be dismissed. *Id.* The statute provides in pertinent part that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, the record shows that the Arizona Supreme Court denied review on direct appeal on July 30, 2009. Ex. E. Starr had 90 days to petition the United States Supreme Court for review. Sup.Ct.R. 13. He did not do so. Thus, his convictions became final on direct review 90-days later. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (conclusion of direct review occurs when the 90-day time period during which a defendant may file a petition for writ of certiorari in the United States Supreme Court expires, regardless of whether the petitioner files such a petition).

However, the one-year limitation period did not begin to run immediately because Starr's PCR petition was still pending. *See* 28 U.S.C. § 2244(d)(2). Starr's PCR petition remained pending at least until October 26, 2010, when the Arizona Court of Appeals denied relief. Ex. N. Because Starr filed the instant petition on July 2, 2011, well within a year of that date, it is timely.

7

### III.  EXHAUSTION AND PROCEDURAL DEFAULT

Respondents contend that all Starr's claims were not properly exhausted and are procedurally barred from habeas review.  A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999).  "[A] petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999).

Additionally, a state prisoner must not only present the claims to the proper court, but must also present them fairly.  A claim has been "fairly presented" if the petitioner has described the operative facts and federal legal theories on which the claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44

1  F.3d 1396, 1403 (9th Cir. 1995). "Our rule is that a state prisoner has not 'fairly
2  presented' (and thus exhausted) his federal claims in state court unless he specifically
3  indicated to that court that those claims were based on federal law." *Lyons v.*
4  *Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d
5  904 (9th Cir. 2001). A petitioner must alert the state court to the specific federal
6  constitutional guaranty upon which his claims are based, *Tamalini v. Stewart*, 249
7  F.3d 895, 898 (9th Cir. 2001), however, general appeals in state court to broad
8  constitutional principles, such as due process, equal protection, and the right to a fair
9  trial, are insufficient to establish fair presentation of a federal constitutional claim.
10 *Lyons*, 232 F.3d at 669. Moreover, it is not enough that a petitioner presented to the
11 state court all the facts necessary to support an inadequately identified federal claim
12 or that a "somewhat similar" state law claim was raised. *Baldwin v. Reese*, 541 U.S.
13 27, 28 (2004); *Shumway v. Payne*, 223 F.3d 982, 988 (9th Cir. 2000) (mere similarity
14 between a claim of state and federal error insufficient to establish exhaustion).
15 "Exhaustion demands more than drive-by citation, detached from any articulation of
16 an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th
17 Cir. 2005).

18  Claims may be procedurally defaulted and barred from federal habeas review
19 in a variety of circumstances. If a state court expressly applied an adequate and
20 independent state procedural bar when the petitioner attempted to raise the claim in
21 state court review of the merits of the claim by a federal habeas court is barred. *See*
22 *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). Arizona courts have been consistent

9

in the application of the state's procedural default rules. *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Ariz.R.Crim.P. 32.2(a) is an adequate and independent procedural bar). In Arizona, claims not previously presented to the state courts on either direct appeal or collateral review are generally barred from federal review because any attempt to return to state court to present them would be futile unless the claims fit into a narrow range of exceptions. *See Ariz.R.Crim.P.* 32.1(d)-(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Because these rules have been found to be consistently and regularly followed, and because they are independent of federal law, either their specific application to a claim by an Arizona court, or their operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of such a claim by a federal habeas court. *Stewart*, 536 U.S. at 860; *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (Rule 32, Ariz.R.Crim.P. is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in postconviction proceedings).

        **1.**      **Analysis of Claims**

            **a.**      **Claims 1, 2 and 3**

Claim 1 asserts that Starr's rights to free speech, to peaceably assemble, and to petition the government for redress of his grievances were violated when he was selectively prosecuted. *Petition*, p. 3. In Claim 2, Starr contends that his Fourth Amendment right to be free from unreasonable search and seizures was violated

when he was indicted without probable cause. *Id.*, p. 4. Claim 3 asserts that Starr was subjected to double jeopardy when he was prosecuted criminally after the conclusion of a quiet title action involving the same property. *Id.* On direct appeal, Starr raised these claims, under the heading "prosecutorial misconduct," for the first time in his petition to the Arizona Supreme Court. Ex. D. In his first PCR petition, the claims were raised for the first time in his petition for review by the Arizona Court of Appeals. Ex. I. He then raised the claims, again under the heading of "prosecutorial misconduct," in his second PCR petition. The trial court, in a decision adopted by the Court of Appeals, found the claims precluded under Rule 32.2(a), Ariz.R.Crim.P., because they were not raised properly on direct appeal. Exs. L, N.

Because the state courts expressly applied Rule 32.2(a) to these claims, and because the rule is consistently applied, these claims are not subject to review by the federal court in a habeas proceeding. *See Ylst*, 501 U.S. at 801; *Stewart*, 536 U.S. at 860 (holding that Ariz.R.Crim.P. 32.2(a) is an adequate and independent procedural bar). Additionally, the rules in Arizona prevent a petitioner from returning to state court to exhaust his claims except in a narrow range of circumstances. *See Ariz.R.Crim.P.* 32.1(d)-(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). None of those circumstances are present in this case and, as such, unless Starr can establish cause and prejudice, the claims are procedurally barred from review by this Court. *Stewart*, 536 U.S. at 860; *Ortiz*, 149 F.3d at 931-32; *Mata*, 916 P.2d at 1050-52.

### b. Claim 4

In Claim 4, Starr asserts that the prosecutor violated his Sixth Amendment rights to "a speedy public trial for criminal offenses, a fair trial, fair legal counsel, witnesses on his behalf, and constitutionally, judicially, and legally correct indictment." *Petition*, p. 4. Although there is some overlap between this claim and others, no Sixth Amendment claim containing these allegations appears in any of Starr's state court pleadings. As such, this claim has not been "fairly presented" in the state courts and is barred from federal habeas review. *Picard*, 404 U.S. at 277-78; *Rice*, 44 F.3d at 1403. Additionally, as Respondents note, to the extent this claim can be construed as being based on prosecutorial misconduct, it is barred for the same reasons that apply to Claims 1, 2 and 3.

### c. Claim 5

Claim 5 alleges that Starr, by being sentenced to consecutive terms of imprisonment, was subjected to cruel and unusual punishment in violation of the Eighth Amendment. *Petition*, p. 5. Although he did contend in the state courts that it was error for the trial court to impose consecutive sentences, Exs. I, p. 14; M, p. 13, no mention was made of either the Eighth Amendment or its prohibition against cruel and unusual punishment. As such, this claim was not "fairly presented" to the state courts.

### d. Claim 6

Here, Starr reasserts his claims of judicial and prosecutorial misconduct as a violation of his Fourteenth Amendment rights to due process and equal protection.

12

*Petition*, p. 5. Although he did contend in some of his state court pleadings that he was subjected to prosecutorial and judicial misconduct, Exs. D, p. 6, 9; I, pp. 6; Ex. I, pp. 7-14; Ex. K, pp. 7-14, no mention was made in any of these arguments of the Fourteenth Amendment, due process or equal protection. As such, this claim was not "fairly presented" to the state courts. Additionally, because this claim is based on judicial and prosecutorial misconduct, it is barred for the same reasons that apply to Claims 1, 2 and 3.

### e. Claim 7

This claim, which Starr has enumerated as "5.2" in the petition, alleges six instances of ineffective assistance of trial counsel and one instance of ineffective assistance of appellate counsel. Specifically, he alleges that his trial counsel (1) did not object to the consecutive sentence imposed by the trial court; (2) did not question the indictment of "false instruments" even though the prosecutor repeatedly called them "false documents," (3) never objected to the admission of misleading evidence; (4) never questioned the conspiracy and criminal syndicate charges based on a single act; (5) never objected to the trial court's refusal to give a specific intent instruction in relation to the conspiracy charge; and (6) never called any witnesses on Starr's behalf. *Petition*, p. 6. Starr also alleges that his appellate counsel was ineffective for failing to raise his trial counsel's ineffectiveness on appeal. *Id.*

Although his PCR petition can be read as including his other claims of ineffective assistance, Starr did not raise the claim that his counsel was ineffective for failing to call witnesses. Ex. K. Additionally, the ineffective assistance claims he

did allege in his trial court petition were not included in his petition for review of his PCR petition filed in the Arizona Court of Appeals. Ex. M. In fact, the only reference to ineffective assistance of counsel in his Court of Appeal brief is offered in support of Starr's claim that he could show "cause and prejudice" in relation to his ineffective assistance claims. Significantly, however, he does not identify any specific claim of ineffective assistance in the appellate brief. *See* Ex. M, pp. 7-8. As such, the state appellate court did not have an opportunity to address the merits of any of the ineffective assistance claims he has raised in the instant petition. Thus, none of the claims are exhausted. *Swoopes*, 196 F.3d at 1010 ("[E]xcept in habeas petitions in life-sentence or capital cases, claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.")

### 2. Cause and Prejudice

Because each of Starr's claims was either barred from review under Rule 32 or would be precluded by that rule if he attempted to return to the state court, *see Ariz.R.Crim.P.* 32.1(d)-(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision), they are procedurally defaulted and not subject to review unless Starr can demonstrate cause for his noncompliance with the state's procedural rules and resulting prejudice, or establish that a miscarriage of justice would result from the lack of review. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). To establish cause, a petitioner must point

1  to some objective factor external to the defense impeded his efforts to comply with
2  the state's procedural rules. *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004). "[C]ause
3  is an external impediment such as government interference or reasonable
4  unavailability of a claims factual basis." *Robinson v. Ignacio*, 360 F.3d 1044, 1052
5  (9th Cir. 2004) (citations omitted). "Prejudice" is actual harm resulting from the
6  constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir.
7  1984); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996).

8        In his Reply, Starr argues that he had no money to hire competent counsel, no
9  law books to research his case, and did not "know what the lawyers should have
10 known." *Reply*, p. 2. It is settled that ignorance of the state's procedural rules or
11 lack of legal training do not constitute legally cognizable "cause" for a petitioner's
12 failure to fairly present a claim. *Hughes v. Idaho State Board of Corrections*, 800
13 F.2d 905, 908-10 (9th Cir. 1986); *Schneider v. McDaniel*, 674 F.3d 1144, 1153 (9th
14 Cir. 2012). Additionally, Starr has not explained how the lack of library access
15 impacted his case. His *pro se* pleadings are replete with legal citation to statutory
16 and case law, both state and federal. Prisoners do not have an abstract "freestanding
17 right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).
18 Rather, they are obligated to show that they suffered actual injury as a result of
19 alleged prison library shortcomings. *Id*. Based on Starr's submissions to this Court
20 and the state courts, he has not shown that he lacked the necessary tools to present his
21 claims.
22

Alternatively, a federal court may review the merits of a procedurally defaulted claim where a petitioner can establish that a "fundamental miscarriage of justice" would otherwise result. *Schlup v. Delo*, 513 U.S. at 327. A fundamental miscarriage of justice exists when a constitutional violation resulted in the conviction of one who is actually innocent. *Id*. Starr has not argued or established that his conviction constituted a fundamental miscarriage of justice.

## IV.     RECOMMENDATION

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **deny** Starr's Petition for Writ of Habeas Corpus (Doc. 1).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Replies shall not be filed without first obtaining leave to do so from the District Court. If any objections are filed, this action should be designated case number: **CV 11-0395-TUC-JGZ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be

considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (*en banc*).

Dated this 23rd day of August, 2013.

Jacqueline M. Rateau
United States Magistrate Judge